J-S59001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAUL PACHECO, | : | |
| | : | |
| Appellant | : | No. 726 EDA 2013 |

Appeal from the PCRA Order Entered February 5, 2013,
In the Court of Common Pleas of Northampton County,
Criminal Division, at No. CP-48-CR-0003795-2011.

BEFORE:  SHOGAN, J., LAZARUS, J. and STRASSBURGER,[*] J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 10, 2015**

Appellant, Raul Pacheco, appeals *pro se* from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

We summarize the procedural history of this case as follows.[1]  On January 26, 2012, Appellant pled guilty to one count of attempted burglary.  On March 30, 2012, the trial court sentenced Appellant to a term of incarceration of three to ten years, followed by a term of probation of five

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  For an exhaustive recitation of the factual and procedural history of this matter, we direct the reader to pages two through twenty-two of the PCRA court's opinion of May 16, 2013.  Although the PCRA court's opinion includes facts pertaining to multiple lower court docket numbers, only the matter at docket number CP-48-CR-0003795-2011 is the subject of this appeal.

years. On May 18, 2012, the trial court further sentenced Appellant to pay restitution in the amount of $26,751.54. Appellant did not file a direct appeal.

On October 18, 2012, Appellant filed, *pro se*, the instant PCRA petition. On October 20, 2012, the PCRA court appointed counsel. Thereafter, PCRA counsel filed a **Turner**/**Finley** letter.[2] On January 7, 2013, pursuant to Pa.R.Crim.P. 907, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition in twenty days. In an order entered February 5, 2013, the PCRA court denied Appellant's PCRA petition and granted appointed counsel's request to withdraw. Subsequently, on February 6, 2013, the PCRA court received from Appellant a *pro se* "Letter in Response," dated February 4, 2013, attempting to address the PCRA court's notice of intent to dismiss. Also on February 6, 2013, the PCRA court entered an order denying Appellant's *pro se* "Letter in Response." This timely appeal followed.

Appellant presents in his *pro se* brief the following issues for our review, which we reproduce *verbatim*:

> a) WHETHER COUNSELS NO MERIT LETTER MUST BE REVIEWED UNDER THE SIXTH AMENDMENT RIGHT TO EFFECTIVE PCRA COUNSEL AS RULE 904 IS AN INDEPENDENT STATE LAW GROUND, IN ADDITION PLEA COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY INDUCING A PLEA WHICH WAS

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

-2-

NOT KNOWING OR INTELLIGENT AND IS DEVOID OF ITS VOLUNTARY CHARACTER AS A MATTER OF LAW.

b) WHETHER PLEA COUNSEL UNLAWFULLY INDUCED THE PLEA ON ILL ADVISE THE COURT WOULD IMPOSE CONCURRENT SENTENCES AND THE JUDGE DID NOT EXPLAIN THE FULL RAMIFICATION IT COULD IMPOSE A CONSECUTIVE SENTENCE.

c) WHETHER COUNSEL ILL ADVISED THE APPELLANT TO ENTER A PLEA WHEN NO FACTUAL BASIS EXISTED FOR THE SUFFICIENCY OF ATTEMPTED BURGLARY.

Appellant's Brief at 2.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

In order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). We have explained that trial counsel cannot be deemed ineffective for failing to

pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

> Our Supreme Court has long defined "reasonableness" as follows:
>
> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Commonwealth ex rel. Washington v. Maroney***, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Pierce***, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) (citing ***Commonwealth v. Sneed***, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that an appellant has failed to meet the prejudice prong of

an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. **Commonwealth v. Baker**, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). We are bound by the PCRA court's credibility determinations where there is support for them in the record. **Commonwealth v. Battle**, 883 A.2d 641, 648 (Pa. Super. 2005) (citing **Commonwealth v. Abu-Jamal**, 720 A.2d 79 (Pa. 1998)).

Furthermore, claims of ineffective assistance of counsel are not self-proving. **Commonwealth v. Wharton**, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." **Commonwealth v. D'Amato**, 856 A.2d 806, 812 (Pa. 2004). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." **Commonwealth v. Bracey**, 795 A.2d 935, 940 n.4 (Pa. 2001).

We have reviewed the briefs of the parties, the relevant law, the certified record before us on appeal, and the thorough opinion of the PCRA court dated May 16, 2013. We conclude that each of the issues presented by Appellant lacks merit and the PCRA court's well-crafted opinion adequately addresses Appellant's claims on appeal. Accordingly, we affirm on the basis of the PCRA court's opinion and adopt its reasoning as our own. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2015

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | No.: C-48-CR-3795-2011 |
| v. | |
| RAUL PACHECO, | |
| Defendant. | |

2013 MAY 16 AM 11:24
CLERK OF COMMON PLEAS
CRIMINAL DIVISION
NORTHAMPTON COUNTY, PA
FILED

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

**AND NOW**, this 16th day of May, 2013, the Court issues the following statement:

Following guilty pleas and sentencing on charges of attempted burglary in two related cases, Defendant Raul Pacheco ("Pacheco") filed a Petition for Post Conviction Collateral Relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 *et seq.*, which this Court denied. Pacheco then filed a timely Notice of Appeal to the Superior Court of Pennsylvania. On April 1, 2013, pursuant to our request under Pa.R.A.P. 1925(b), we received Pacheco's Concise Statement of Matters Complained of on Appeal. For the reasons set forth below, we respectfully suggest that Pacheco's appeal lacks merit and should be dismissed.

Circulated 01/26/2015 11:04 AM

## BACKGROUND

Although Pacheco's PCRA Petition was filed only in the instant matter, he was sentenced on charges in two related cases, and the issues relevant to the PCRA determination depend on facts from both cases. Accordingly, the Court will discuss the factual background for both.

### The Criminal Conduct

On May 19, 2011, there was a burglary at the home of Scott and Natalie Arnold at 323 Prospect Avenue in Bethlehem, Pennsylvania. *See* Aff. of Det. Bradford Jones, Bethlehem Police Dep't, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Oct. 25, 2011) ("Jones Aff.") ¶¶ 2-3. The burglary occurred while the Arnolds were at work. *See id.* ¶ 4. The burglar forced entry to the home from the back door and stole a significant amount of jewelry. *See id.* In a second burglary at the home on July 11, 2011, the burglar stole a BB gun and a green mountain bike. *See id.* ¶ 6.

On July 4, 2011, there was a burglary at the home of Joseph Koch of 955 Jeter Avenue in Bethlehem. *See id.* ¶ 5. The burglary occurred while Koch was at work. See id. The burglar forced entry by breaking a window at the back of the house and stole numerous items, including jewelry, rare coins, and binoculars. *See id.* At the time of the burglary, Koch's neighbor saw a white male with a tattoo on his forearm riding a bicycle in Koch's driveway. *See id.*

2

Circulated 01/26/2015 11:04 AM

On the morning of August 8, 2011, officers from the Fountain Hill Police Department responded to a burglar alarm at the home of Paul and Sharon Kipila at 1116 Seneca Street in Bethlehem. *See id.* ¶ 8. The attempted burglary occurred while the Kipilas were at work. *See id.* The burglar forced entry at the back of the house. *See id.* However, the Kipilas determined that nothing was missing. *See id.* The officers surmised that the burglar had fled when the alarm sounded. *See id.*

Later in the morning of August 8, 2011, a man attempted to burglarize the home of Nancy Arnold at 961 Moravia Street in Bethlehem, about half a mile from the Kipilas' house. *See* Aff. of Investigator Christopher Leidy, Lower Saucon Police Dep't, *Commonwealth v. Pacheco*, C-48-CR-2975-2011 (Aug. 15, 2011) ("Leidy Aff.") ¶¶ 1-2; Jones Aff. ¶ 7; Notes of Testimony, *Commonwealth v. Pacheco*, OTN No. T080000-4, 2975-2011 (C.P. Northampton Co. Sept. 22, 2011) ("N.T. Sept. 22, 2011") at 19. Nancy Arnold heard her doorbell ring three times but did not answer it. *See* N.T. Sept. 22, 2011 at 4-5. Shortly thereafter, she heard glass break. *See id.* at 5. She entered her kitchen and saw a man breaking the window. *See id.* at 6. Investigator Christopher Leidy of the Lower Saucon Police Department and other officers responded to Nancy Arnold's 911 call. *See* N.T. Sept. 22, 2011 at 19-20. Nancy Arnold told the police that the man who had broken her window was a medium-skinned man, possibly Hispanic, in his forties, with no facial hair, and that he had been wearing a dark blue hat and a tan

3

Circulated 01/26/2015 11:04 AM

shirt with the sleeves rolled up. *See* Leidy Aff. ¶ 3. She said that when she confronted him, he rode away on a blue-gray bicycle. *See id.* ¶ 4.

The Police Investigations

Nancy Arnold's neighbor had made a surveillance video of the man who had broken her window, and Nancy Arnold confirmed that the man in the video was the man she had seen. *See* Leidy Aff. ¶¶ 5-6. The Lower Saucon Police Department publicized a photograph of the suspect taken from the neighbor's surveillance video. *See* Leidy Aff. ¶ 8. In the photograph, the suspect, a white male, was wearing a cream-colored, short-sleeved, button-down shirt and a black baseball cap with blue writing on the front. *See* Jones Aff. ¶ 7. He was pushing a green mountain bike. *See id.* A tattoo was visible on his forearm. *See id.* Detective Bradford Jones of the Bethlehem Police Department saw the photograph and connected it with the green mountain bike that Scott Arnold had reported stolen. *See* Jones Aff. ¶ 7. Scott Arnold later positively identified the green mountain bike in the photograph as his. *See id.* ¶ 8.

Video from security cameras at the Republican Club near the Kipilas' house showed a white male wearing a cream-colored, short-sleeved, button-down shirt and a black baseball cap with blue writing on the front, pushing a green mountain bike. *See id.* ¶ 9. According to the time stamp on the video, at 10:44 a.m., the man stowed the mountain bike at the back of the Republican Club, approached the Kipilas' house, and checked the perimeter.

4

Circulated 01/26/2015 11:04 AM

*See id.* At 10:46 a.m., he moved to the back of the Kipilas' house. At 10:49 a.m., he fled the house, returned to the Republican Club, retrieved the green mountain bike, and rode away. *See id.* The Kipilas' security company received an alarm from the back door of the Kipilas' home at 10:49 a.m. *See* Jones Aff. ¶ 10.

After publicizing the photograph of the burglary suspect, Investigator Leidy received an anonymous tip that the man in the photograph lived in an apartment at 1535 E. 9th Street in Bethlehem and that the green mountain bike in the photograph was at the apartment. *See* Leidy Aff. ¶ 9. Investigator Leidy went to the address and met a man who told him that the burglary suspect was his mother's boyfriend. *See id.* ¶ 11. The mother told him that her boyfriend was Pacheco. *See* Leidy Aff. ¶ 13. Outside the apartment, Leidy found the green mountain bike and the black baseball cap. *See id.* ¶ 12. Scott Arnold confirmed that the green mountain bike was his. *See* Jones Aff. ¶ 11.

After obtaining search warrants, Detective Jones and Investigator Leidy searched Pacheco's apartment and recovered numerous stolen items, including a black bag filled with jewelry, Scott Arnold's BB gun, and a pair of binoculars and a rare coin belonging to Koch. *See* Jones Aff. ¶¶ 11-12. On August 18, 2011, Pacheco was arrested. *See* Jones Aff. ¶ 13. At the time of his arrest, he was riding a bicycle and wearing a cream-colored, short-sleeved, button-down shirt. *See id.*

5

Circulated 01/26/2015 11:04 AM

<u>Docket Number 2975-2011</u>

On October 13, 2011, Pacheco was charged in connection with the August 8, 2011 window-smashing incident that had occurred at Nancy Arnold's home at 961 Moravia Street. *See* Criminal Information, *Commonwealth v. Pacheco*, C-48-CR-2975-2011 at 1 (C.P. Northampton Co. Oct. 13, 2011). He was charged with one count of criminal attempt to commit burglary under 18 Pa.C.S.A. §§ 901(a) and 3502(a), one count of criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(ii), and one count of criminal mischief under 18 Pa.C.S.A. § 3304(a)(5). The charges under Docket Number 2975-2011 involved only the August 8, 2011 incident at Nancy Arnold's house. *See id.*

On September 22, 2011, a preliminary hearing in Docket Number 2975-2011 was held before Magisterial District Judge David W. Tidd. *See* N.T. Sept. 22, 2011. Nancy Arnold testified that she had seen the burglar at her home clearly. She said, "I saw him banging on the glass breaking it. I went face-to-face with him." *Id.* She said she was approximately six to twelve inches from the man and looked directly into his face for approximately ten seconds. *See id.* at 10-13. She said that after he fled, she went to her dining room window and watched him ride away on a blue bicycle. *See id.* at 5-6, 13. She pointed to Pacheco in the courtroom and identified him as the man she had seen breaking her window. *See id.* at 5.

6

Circulated 01/26/2015 11:04 AM

Pacheco was represented by Michael P. Corcoran, Esquire, who cross-examined Nancy Arnold and Investigator Leidy. *See id.* at 6, 17. Attorney Corcoran elicited from Nancy Arnold that she recalled Pacheco as having facial hair, which contradicted the description she had given police on the day of the incident. *See id.* at 16. District Judge Tidd found that the Commonwealth had met its burden of proof to establish a prima facie case, and he bound the charges over for trial. *See id.* at 16, 21-22.

On January 3, 2012, Pacheco pled guilty to one count of attempted burglary in connection with the August 8, 2011 incident at Nancy Arnold's house. *See* Notes of Testimony, Commonwealth v. Pacheco, C-48-CR-2975-2011 (C.P. Northampton Co. Jan. 3, 2012) ("N.T. Jan. 3, 2012"). Pacheco and his counsel, Attorney Corcoran, executed a written guilty plea statement and engaged in a verbal guilty plea colloquy with the Court in which Pacheco acknowledged that he had been informed, among other things, (1) that the maximum sentence for the charge to which he was pleading guilty was twenty years in prison and a $25,000 fine; (2) that the Court was not bound by the terms of any plea agreement he might have negotiated with the Commonwealth; (3) that he was waiving any right to file pretrial motions to challenge the Commonwealth's evidence; (4) that even after his guilty plea was accepted by the Court, he would have a right to file a motion to withdraw his guilty at any time prior to sentencing; (5) that if he wished to move to withdraw his plea after sentencing on the grounds that it was

7

Circulated 01/26/2015 11:04 AM

involuntary or that counsel had been ineffective, any such motion would have to be filed within ten (10) days of sentencing; and (6) that if the Court did not allow him to withdraw his plea, he would be entitled to appeal the Court's decision. *See* Guilty Plea Statement (Colloquy), *Commonwealth v. Pacheco*, C-48-CR-2975-2011 (C.P. Northampton Co. Jan. 3, 2012)("Guilty Plea Statement 2975"), Nos. 27, 28, 30, 32, 33, 34, 35; N.T. Jan. 3, 2012 at 2-14.

The Court explained to Pacheco that given his prior record score and the offense gravity score, a standard-range sentence could be up to fifty-two months as a minimum and that an aggravated sentence could be up to sixty-one months as a minimum. *See* N.T. Jan. 3, 2012 at 3. Pacheco acknowledged that he was pleading guilty of his own free will and had not been threatened or coerced by anyone. See Guilty Plea Statement 2975-2011, Nos. 37-41. He agreed that the Commonwealth's recitation of the facts was correct. *See* N.T. Jan. 3, 2012 at 13. He acknowledged that he was satisfied with the services of his attorney. *See* Guilty Plea Statement 2975-2011, Nos. 42-45. He acknowledged that he had pled guilty in front of a judge in the past. *See* N.T. Jan. 3, 2012 at 10. The Court accepted Pacheco's plea, ordered a presentence investigation, and deferred sentencing to March 9, 2012. *See id.* at 14.

8

Circulated 01/26/2015 11:04 AM

<u>Case Number 3795-2011</u>

On October 25, 2011, under a separate docket number, Pacheco was charged in connection with all of the above-described criminal conduct other than the August 8, 2011 incident at Nancy Arnold's house. *See* Criminal Complaint, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Oct. 25, 2011) ("Criminal Complaint 3795"). In connection with his May 19, 2011 theft of jewelry from the home of Scott and Natalie Arnold at 323 Prospect Avenue, Pacheco was charged with one count of burglary under 18 Pa.C.S.A. § 3502(a), one count of criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(ii), one count of theft by unlawful taking under 18 Pa.C.S.A. § 3921(a)(1), and one count of receiving stolen property under 18 Pa.C.S.A. § 3925(a)(1). *See id.* In connection with Pacheco's July 11, 2011 theft of the mountain bike and BB gun from the same address, he was charged with one count of theft by unlawful taking under 18 Pa.C.S.A. § 3921(a)(1) and one count of receiving stolen property under 18 Pa.C.S.A. § 3925(a)(1). *See id.*

In connection with his July 4, 2011 theft of coins, jewelry, binoculars, and other items from the home of Joseph Koch at 955 Jeter Avenue, Pacheco was charged with one count of burglary under 18 Pa.C.S.A. § 3502(a), one count of criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(ii), one count of theft by unlawful taking under 18 Pa.C.S.A. § 3921(a)(1), and

9

Circulated 01/26/2015 11:04 AM

one count of receiving stolen property under 18 Pa.C.S.A. § 3925(a)(1). *See id.*

In connection with the August 8, 2011 forced entry of the home of Paul and Sharon Kipila at 1116 Seneca Street, Pacheco was charged with one count of criminal attempt to commit burglary under 18 Pa.C.S.A. § 901(a) and 3502(a) and one count of criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(ii). *See id.*

A preliminary hearing was scheduled for November 4, 2011, but on that day, Pacheco requested and was granted a continuance until November 23, 2011 in order to permit him to secure legal representation. *See* Criminal Docket Sheet, *Commonwealth v. Raul Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Nov. 4, 2011) ("Docket Sheet 3795"). However, Pacheco did not secure legal representation by November 23, 2011, and he was therefore unrepresented at the Preliminary Hearing. On November 23, 2011, the preliminary hearing was held before Magisterial District Judge James F. Stocklas, who bound the charges over for trial. *See* Docket Sheet 3795 (Nov. 23, 2011).

On January 12, 2012, nine days after he had pled guilty to the one count of attempted burglary in Case Number 2975-2011 involving Nancy Arnold, Pacheco pled guilty to one count of attempted burglary in case Number 3795-2011. *See* Executed Criminal Information in Docket Number 3795-2011. The guilty plea in Docket Number 3795-2011 related solely to

10

Circulated 01/26/2015 11:04 AM

the attempted burglary at the home of Paul and Sharon Kipila at 1116 Seneca Street. *See id.* At that time, Pacheco was represented by Vivian Zumas, Esquire, and he and his counsel executed a written guilty plea statement essentially identical to the guilty plea statement Pacheco had executed in Case Number 2795-2011. *See* Guilty Plea Statement (Colloquy), *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Jan. 11, 2012) ("Guilty Plea Statement 3795").

At the verbal guilty plea colloquy, which occurred on January 26, 2012, Pacheco's counsel told the Court that Pacheco was involved in two other cases, *i.e.*, Docket Number 2795-2011 and an escape case, and that Pacheco's guilty plea in Case Number 3975-2011 was "part of the universal deal we worked out to settle all three separate cases." Notes of Testimony, *Commonwealth v. Pacheco*, C-48-CR-3795-100 at 2 (C.P. Northampton Co. Jan. 26, 2012) ("N.T. Jan. 26, 2012"). Ms. Zumas said that the Commonwealth would *nolle prosequi* the escape case as part of the settlement. *See id.* The Commonwealth agreed with Attorney Zumas's characterization of the settlement. *See id.* at 3. The Court reviewed the same questions it had reviewed at Pacheco's guilty plea colloquy in Docket Number 2975-2011, and Pacheco gave similar answers. *See id.* at 4-11. The Court reminded Pacheco that the Court was not bound by the terms of any plea agreement he had negotiated with the Commonwealth and that the maximum sentence for the crime to which he was pleading guilty was twenty

11

Circulated 01/26/2015 11:04 AM

years in prison and a $25,000 fine. *See id.* at 9. Pacheco acknowledged that the Commonwealth's recitation of the facts was correct. *See id.* at 12. The Court accepted Pacheco's guilty plea, ordered a presentence investigation, and deferred sentencing to March 9, 2012, stating, "and that will be the same time as Mr. Pacheco's sentence on the other burglary that he pled guilty to a few weeks ago." *Id.* at 13.

Pacheco completed a statement detailing his post-sentence rights, including his rights to challenge his sentence, challenge the validity of his guilty plea, and move to withdraw his guilty plea. *See* Post-Sentencing Colloquy--Important Sentence Information, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Jan. 26, 2012) ("Post-Sentencing Statement"). The document was signed by Pacheco and both of his counsel. *See id.*

### Sentencing

At the sentencing hearing on March 9, 2012, the parties informed the Court that the plea agreement included an agreed-upon sentence of five to ten years, and the Court advised Pacheco that it would not accept the agreed-upon sentence. *See* Notes of Testimony, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Mar. 9, 2012) ("N.T. Mar. 9, 2012") at 2. The Court postponed the sentencing for another three weeks in order to give Pacheco time to consider whether, in light of the Court's

12

Circulated 01/26/2015 11:04 AM

intentions, he wished to withdraw his guilty pleas or proceed with sentencing. *See id.*

> THE COURT: They have an agreement of a sentence of 5 to 10 years in state prison. I told the attorneys at the time of the guilty plea that I would not accept the agreed upon sentence. I wanted to sentence Mr. Pacheco according to the law and according to his prior criminal record. I informed him of that today that I would not accept the sentencing agreement. I have that right as a judge not to accept a sentencing agreement.
>
> Mr. Pacheco is now unsure whether he wishes to retain his guilty plea or if he wants to withdraw his guilty plea and proceed to a jury trial. Mr. McGinley [attorney for the Commonwealth], what is your position?
>
> MR. MCGINLEY: I informed Mr. Pacheco that if he is found guilty on these current charges and because of his prior record, which is specifically violent, he potentially would be looking at 50 years mandatory on each of those charges and combined that would be 100 years. It would be a life sentence if he were to take this to trial. I put him on notice that according to law that the Court would be seeking mandatories should it proceed to trial.
>
> THE COURT: [W]e are giving Mr. Pacheco three weeks until March 30 for him to make a decision on whether he wants to retain the two guilty pleas and proceed to sentencing under those guilty pleas with me or if he wants to proceed to a jury trial in front of me . . . .

*Id.* at 2-3.

At the sentencing hearing on March 30, 2012, the Court inquired whether Mr. Pacheco had made a decision.

> THE COURT: We were in this matter previously and Mr. Pacheco was unsure whether he was continuing with his guilty plea or whether he wanted to withdraw the guilty plea and go to trial. Ms. Zumas, you're here as well for Mr. Pacheco?
>
> MS. ZUMAS: That's correct.

13

Circulated 01/26/2015 11:04 AM

THE COURT: Mr. Corcoran, you're here for Mr. Pacheco?

MR. CORCORAN: I am.

THE COURT: And Mike McGinley is here for the Commonwealth of Pennsylvania.

MR. MCGINLEY: Yes, Judge.

THE COURT: Do you have a report for me, Counsel?

MR. CORCORAN: Yes. At this point, Your Honor, I did have an opportunity to confer with Mr. Pacheco on Wednesday and Thursday and, at this point in time, he's expressed a desire to continue with sentencing.

. . . .

THE COURT: As I advised you when you entered your pleas of guilty, Mr. Pacheco, you had a right to file your motion to withdraw those pleas. No such motion has been filed. Do you wish your guilty pleas to stand at this point or do you wish to withdraw your guilty pleas and proceed to a trial by jury in both cases?

MR. PACHECO: Wish for my plea to stand.

Notes of Testimony, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Mar. 30, 2012) ("N.T. Mar. 30, 2012") at 2-3.

Attorney Corcoran, Pacheco's counsel in Docket Number 2975-2011, asked the Court to consider imposing the sentences in the two cases concurrently. *See id.* at 9. Attorney Corcoran's request placed Pacheco on notice that the Court might choose to impose the two sentences consecutively.

MR. CORCORAN: . . . . We're standing here today and we understand, Your Honor, that you have the last say with respect to sentencing, Mr. Pacheco understands that, but I would

14

Circulated 01/26/2015 11:04 AM

respectfully ask Your Honor to consider imposing a term of incarceration or sentence that's close to what defense counsel and the Commonwealth reached in this case which was 5 to 10 years. I would further ask that whatever sentence Your Honor imposes that they run concurrently, both the case that Ms. Zumas is handling and the one that I'm handling.

*Id.* at 9.

On the charge of criminal attempt to commit burglary in Docket Number 2975-2011, the Court sentenced Pacheco to a term of imprisonment in a state correctional institution for a minimum period of four years to a maximum period of ten years, to pay the costs of prosecution, to serve a consecutive term of five years of probation, and to pay restitution to Nancy Arnold in the amount of $380. *See id.* at 22. On the charge of criminal attempt to commit burglary in Docket Number 3795-2011, the Court sentenced Pacheco to serve a term of imprisonment in a state correctional institution for a minimum period of three years to a maximum period of ten years and to serve a consecutive term of five years of probation. *See id.* at 22-23. The Court ordered the sentences of imprisonment and parole to run consecutive to each other and the sentences of probation to run consecutive to each other and consecutive to the sentences of imprisonment and parole. *See id.* at 23. Thus, Pacheco's total sentence was a minimum period of seven years to a maximum period of twenty years followed by a consecutive term of ten years of probation. *See id.*[1]

---

[1]On May 22, 2012, upon agreement of the parties and at the Commonwealth's request, an Order was entered in Docket Number 3795-2011 amending the

15

Circulated 01/26/2015 11:04 AM

In explaining the sentence to Pacheco, the Court pointed out that the Commonwealth had already given Pacheco a significant benefit by removing numerous other crimes from his plea agreement. *See id.* at 23. The Court stated that although Pacheco had accepted responsibility for his crimes, had recently stopped abusing substances, and had shown remorse, there were many factors weighing against him, including his extensive prior criminal record dating back to 1977 involving multiple felony convictions, the fact that he had previously served decades in prison and had not been rehabilitated, his lack of a positive family support system, and his weak employment record. *See id.* at 20-21. The Court noted that Pacheco had a prior record score of R-FEL, which meant he was a repeat felony offender, *i.e.*, that he had six convictions on felonies of the first or second degree, which, in his case, included armed robbery, aggravated assault, indecent sexual assault, forgery, theft, and burglary. *See id.* at 17. The Court pointed out that, as an adult, Pacheco had been convicted on at least twenty different occasions. The Court stated: "You are, indeed, a career criminal." *Id.* at 21.

Attorney Corcoran told the Court that Pacheco had previously completed a statement informing him of his post-sentence rights and said, "I can review them with him again." *Id.* at 24. The Court asked, "Mr. Pacheco, do you recall signing a document which set forth your rights that you have

---

sentence to reflect a restitution amount of $26,751.54. *See Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. May 18, 2012).

Circulated 01/26/2015 11:04 AM

post-sentence regarding any challenge to my sentence or appealing my sentence to the Superior Court?" *Id.* at 24. Pacheco answered, "I believe I do." *Id.* Pacheco took no direct appeal from his judgment of sentence.

The PCRA Petition

On October 18, 2012, Pacheco filed a PCRA Petition in Docket Number 3795-2011, alleging that (1) a constitutional violation had so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; (2) ineffective assistance of counsel had so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; and (3) his guilty plea had been unlawfully induced. *See* PCRA Petition, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 at 2 (C.P. Northampton Co. Oct. 18, 2012) ("PCRA Petition").

Pacheco asserted the following in support of his claims: (1) counsel did not spend adequate time with him; (2) he was not represented by counsel at the preliminary hearing and was denied the opportunity to postpone the proceeding to obtain counsel; (3) the Commonwealth's evidence was insufficient to convict him of attempted burglary; (4) his counsel had inappropriately influenced him to plead guilty by advising him that the Court would run his two sentences concurrently; (5) the sentencing judge did not explain the difference between consecutive and concurrent sentences and did not tell him that the sentences could be made consecutive; (6) his plea was not knowing and voluntary, because he was

17

Circulated 01/26/2015 11:04 AM

not apprised of the maximum punishment possible; (7) counsel did not object to the sentence or explain his post-sentencing rights to him; and (8) had he not been "deluded by counsel's urging," he would not have pled guilty. PCRA Petition at 3. Pacheco sought an evidentiary hearing, revocation of his conviction and sentence, and transcripts of the preliminary hearing, relevant record, and sentencing colloquy. *See id.* at 5-7.

On October 19, 2012, the Court appointed Alex J. Karam, Jr., Esquire as PCRA counsel. *See Commonwealth v. Pacheco*, C-48-CR-3795-2000 (C.P. Northampton Co. Oct. 19, 2012). Although the PCRA Petition had been filed only under Docket Number 3795-2011, because the cases were interrelated, the Court appointed Attorney Karam under both Docket Number 3795-2011 and 2795-2011. *See id.*

On October 24, 2012, Attorney Karam submitted a four-page no-merit letter in which he stated that he had reviewed the files in the two criminal cases, including the Criminal Informations signed by Pacheco, the PSI Report, the guilty plea transcripts of January 3, 2012 and January 26, 2012, the written Guilty Plea Colloquies signed by Pacheco, and the Post-Sentencing Rights form signed by Pacheco. *See* Letter of Alexander J. Karam, Jr., Esq. at 2 (Oct. 24, 2012) ("No-Merit Letter"). He concluded that Pacheco's guilty pleas were knowing and voluntary; that he had admitted his guilt; that he had not been coerced in any way; that he had acknowledged in his guilty plea statements that pleading guilty waived his rights to challenge

18

his lack of representation at the preliminary hearing and the Commonwealth's prima facie case; that he had admitted that he was satisfied with his attorneys' services; that the evidence against him was overwhelming and that his attorneys' recommendations to plead guilty were therefore in his best interests; that he was aware that the Court was not bound by the terms of his plea agreement; that he was aware that there was a maximum prison term of twenty years under each charge to which he had pled guilty; that, given his lengthy criminal history, it was implausible that he was not aware that the Court could impose consecutive sentences; and that there was no basis on which to challenge his sentences, since they were in the standard ranges and the Court had discretion to make the sentences consecutive. *See id.* at 1-3. In the letter, Attorney Karam requested that he be allowed to withdraw as PCRA counsel. *See id.* at 3.

On October 29, 2012, Pacheco wrote a response to the No-Merit Letter and sent a copy to the Court. *See* Letter of Raul Pacheco (Oct. 29, 2012). Pacheco's letter largely repeated the arguments in his PCRA Petition. *See id.* at 1-2.

On January 7, 2013, the Court issued a Notice of Intent to Dismiss Without Hearing and allowed Pacheco twenty days to respond. *See Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Jan. 7, 2013). When no response was received within the time allowed, on February 5, 2013, the Court issued an Order denying the PCRA Petition and

19

granting Attorney Karam's request to withdraw as PCRA counsel. *See* *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Feb. 5, 2013).

On February 6, 2013, the Court received a handwritten letter from Pacheco responding to the Notice of Intent to Dismiss Without Hearing. *See* Letter of Raul Pacheco (Feb. 6, 2013). In the letter, Pacheco reiterated the claims he had raised in his PCRA Petition. *See id.* The Court treated Pacheco's letter as a *pro se* motion for reconsideration of the January 7, 2013 Notice of Intention to Dismiss Without Hearing and, on February 6, 2013, denied the motion for reconsideration. *See Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Feb. 6, 2013).

The Appeal

On February 27, 2013, Pacheco filed a Notice of Appeal from the February 5, 2013 Order denying his PCRA Petition. *See* Notice of Appeal, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Feb. 27, 2012). On March 7, 2013, the Court issued an Order directing Pacheco to file a Statement of Matters Complained of on Appeal within twenty-one days. *See Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Mar. 7, 2013).

On April 1, 2013, Pacheco filed his Statement of Matters Complained of on Appeal. *See* Statement of Matters Complained of on Appeal, *Commonwealth v. Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Apr.

20

Circulated 01/26/2015 11:04 AM

1, 2013) ("Statement of Matters Complained of on Appeal"). Although Pacheco's claims were inartfully drafted, interpreting them broadly and considering them together with the allegations in his PCRA Petition and his February 6, 2013 letter responding to the Notice of Intent To Dismiss Without Hearing, he appears to raise the following issues:

First, as more fully set forth below, Pacheco asserts that his guilty plea was involuntary and unknowing, because his counsel, Vivian Zumas, rendered ineffective assistance by (1) advising him to plead guilty to attempted burglary when there was no factual basis for the plea; (2) failing to challenge the sufficiency of the Commonwealth's prima facie case presented at the preliminary hearing; (3) failing to challenge the Court's alleged denial of his right to representation by counsel at the preliminary hearing; (4) erroneously advising him that the Court would likely honor the agreed-upon sentence of five to ten years in his plea agreement and failing to advise him that the Court could impose consecutive sentences; (5) failing to advise him to move to withdraw his guilty plea after the Court declined to honor the agreed-upon sentence; and (6) failing to advise him to move to withdraw his guilty on the ground that the Commonwealth violated its alleged agreement that it would "remain silent" and refrain from asking the Court to impose a longer sentence than the agreed-upon sentence. *See id.* at 1-2.

21

Circulated 01/26/2015 11:04 AM

Second, Pacheco asserts that the No-Merit Letter does not satisfy the requirements established by the Pennsylvania Supreme Court in *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and further defined by the Pennsylvania Superior Court in *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). *See* Statement of Matters Complained of on Appeal at 1.

In his Statement of Matters Complained of on Appeal, Pacheco appears to have abandoned his claims that (1) counsel did not spend enough time with him and (2) counsel did not explain his post-sentence rights to him. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) ("[A]ny issue not raised in a Rule 1925(a) statement will be deemed waived . . . .").

## **DISCUSSION**

### Standard of Review on Appeal

On appeal from grant or denial of post-conviction relief, review is limited to whether the PCRA court's determination is supported by the evidence of record and free of legal error. *See Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997); *Commonwealth v. Ousley*, 21 A.3d 1238, 1241-42 & nn. 2, 3 (Pa. Super. 2011). The PCRA Court's findings will not be disturbed if they are supported by the record. *See Ousley*, 21 A.3d at 1241-42 & nn. 2, 3; *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (en banc).

### Grounds for PCRA Relief

To be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his or her conviction or

22

Circulated 01/26/2015 11:04 AM

sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). These circumstances include a violation of the Pennsylvania or United States Constitution and ineffective assistance of counsel which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). Furthermore, a petitioner must establish that the claims of error raised in the PCRA petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. §9543(a)(3) and (4); *Washington, supra* at 593. An issue has been waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S. §9544(b). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2).

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011).

Previous Litigation and Waiver

None of the claims raised in Pacheco's Rule 1925(a) Statement has been previously litigated. Pacheco did not take a direct appeal from his judgment of sentence.

As a general matter, claims that could have been raised on direct appeal, but were not, are waived and therefore cannot serve as a basis for PCRA relief. *See Commonwealth v. Hanyon*, 772 A.2d 1033, 1035 (Pa. Super. 2001) ("Ordinarily, absent extraordinary circumstances, the failure to file a direct appeal from the judgment of sentence amounts to waiver of any claim which could have been raised in such an appeal, thereby precluding collateral relief."). However, claims of ineffective assistance of counsel may

23

Circulated 01/26/2015 11:04 AM

not be raised on direct appeal but must be deferred until collateral review and therefore may be raised for the first time in a PCRA Petition. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("[A] petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. . . . [A] claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness.").

Based on the above-cited authorities, to the extent that Pacheco's claims are not based on ineffective assistance of counsel, he waived them by failing to take a direct appeal. It is unclear whether all of Pacheco's claims are premised on ineffective assistance of counsel, because his Statement of Matters Complained of on Appeal is inartfully drafted. In addition, many of his assertions are stated ambiguously and could be intended to support more than one claim. As more fully set forth below, taking all of his filings together, reading each claim in the broadest terms, and giving Pacheco the benefit of the doubt in order to avoid waiver, the Court will proceed on the assumption that all of Pacheco's claims are premised on ineffective assistance of counsel.[2]

---

[2]When an issue in a Rule 1925(a) Statement is so vague that the Court has to guess what the appellant is trying to say, the issue is deemed to be waived on appeal. *See Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001) ("[A] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."). Thus, although the Court has attempted to read Pacheco's claims in the most charitable light, to the extent that they remain too vague or ambiguous to permit clear interpretation, they should be deemed waived.

24

Circulated 01/26/2015 11:04 AM

## Ineffective Assistance

Our standard of review when faced with a claim of ineffective assistance of counsel is well settled. First, we note that counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the petitioner].

. . . .

A petitioner must show (1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to prove any one of these prongs results in the failure of petitioner's claim.

*Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (quoting

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. 2010)).

"Allegations of ineffectiveness in connection with the entry of a guilty

plea will serve as a basis for relief only if the ineffectiveness caused

appellant to enter an involuntary or unknowing plea." *Commonwealth v.*

*Allen*, 732 A.2d 582, 587 (Pa. 1999); *accord Commonwealth v. Flanagan*,

854 A.2d 489, 502 (Pa. 2004). The Court will now examine each of

Pacheco's claims to determine whether counsel was ineffective and, if so,

whether it caused Pacheco to enter an involuntary or unknowing plea.

### Factual Basis for Pacheco's Guilty Plea

In his PCRA Petition, Pacheco asserted: "Defendants [sic] guilty plea

was promoted by counsels urging in that a guilty verdict was likely at trial . .

. . Had defendant not been deluded by counsels urging defendant would

have plead [sic] not guilty." PCRA Petition at 3. In his letter in response to

25

Circulated 01/26/2015 11:04 AM

the Notice of Intent To Dismiss Without Hearing, Pacheco asserted: "[C]ounsel lacked information and/or did not discuss the possibility that the defendant's charge may be temporily [sic] and logically related to defendant's other pending case . . . ." Letter Responding to the Notice of Intent To Dismiss Without Hearing at 2 (Feb. 6, 2013). On appeal, Pacheco asserts, "Here, plea counsel ill advised on the Attempted Burglary, when under the totality of the circumstances the elements demonstrate criminal trespass. . . . Clearly, the defendant was prejudiced by plea counsel's ill advise [sic] and inducement of the plea. . . . The Plea was not knowing or voluntary when it was ill advised." Statement of Matters Complained of on Appeal at 2.

Reading these statements together, Pacheco appears to be arguing that his plea was involuntary and unknowing, because his counsel was ineffective in advising him to plead guilty to attempted burglary when there was not a factual basis for the plea, *i.e.*, there was no evidence that he had the specific intent to steal anything from the Kipilas' house. *See Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1247 (Pa. Super. 2002) (where defendant argued that his counsel had advised him to plead guilty without proof of requisite intent, court held that "the true nature of [defendant's] claim is whether he entered a guilty plea without a factual basis due to counsel's ineffectiveness."). To the extent Pacheco is arguing that there was not a factual basis for his plea, we disagree.

26

Circulated 01/26/2015 11:04 AM

When the Court asked the Commonwealth to state the factual basis for

the plea, the Commonwealth stated as follows:

> MR. MCGINLEY: Yes, Judge, there are three different sets of victims in this case. The Commonwealth is withdrawing the charges related to two of them; however, they do remain victims for purposes of sentencing and purposes of restitution. The victims are Scott and Natalie Arnold in the first set, Joseph Kuch [sic] in the second, and Paul and Sharon Kipila in the third. Now the charge that Mr. Pacheco is pleading guilty to relates to Paul and Sharon Kipila of the residence of 1116 Seneca Street in Bethlehem, Pennsylvania.
>
> The evidence that the Commonwealth would have presented is that on April -- excuse me, August 8, 2011, at the address of 1116 Seneca Street belonging to the Kipilas, there was a report of a burglar alarm going off. That alarm was audible, it was sounding. The residents returned to their home, nothing had been disturbed except for the door was forced open.
>
> Later that day -- excuse me -- on the 11th of August, Paul and Sharon Kipila locate talk to the officer involved and stated they noticed a white male walking through the parking lot of the Republican Club that day. Once our officers observed the footage at the Republican Club they saw a video of the defendant walking through a parking lot with a green bike that had previously been reported stolen from one of the previous burglaries.
>
> On -- later that month Detective Leity [sic] of Lower Saucon Police Department and Bradford Jones of Bethlehem Police Department executed a search warrant at the residence where the defendant was living with his paramour at the time. Inside they found the green mountain bike, a black hat with blue writing that had previously been in other burglary surveillance videos as well as a coin and other property belonging to victims in the previous cases that I mentioned.

N.T. Jan. 26, 2012 at 11-12. Thus, the factual basis for the plea included

evidence from the cases of Scott and Natalie Arnold and Joseph Koch.

27

Circulated 01/26/2015 11:04 AM

This evidence was more than sufficient to provide a factual basis for Pacheco's plea to attempted burglary. In a prosecution for attempted burglary under 18 Pa.C.S.A. §§ 901(a) and 3502(a), the Commonwealth must establish both (1) the intent to make unauthorized entry to the house and (2) the intent to commit theft after entry. *See Commonwealth v. Turner*, 434 A.2d 827, 829 (Pa. Super. 1981). "It is a well-known principle that specific intent to commit a crime 'may be found in [defendant's] conduct, or from the attendant circumstances together with all reasonable inferences therefrom.'" *Id.* Pacheco's behavior on the surveillance video from the Republican Club, which was very similar to the defendant's conduct in *Turner*, establishes that Pacheco intended to make unauthorized entry to the Kipilas' house. *See id.* at 830.

> The fresh pry marks on the door, [defendant's] periodic checks to ensure that his conduct was unobserved, and his abandonment of his endeavors when police sirens were heard in the vicinity all support the inference that [defendant] intended to effectuate an unauthorized entry into the house.

*Id.*

The same behavior is enough to establish intent to commit theft after entry. *See Commonwealth v. Morgan*, 401 A.2d 1182, 1187 (Pa. Super. 1979) (*en banc*) (intent to commit theft was shown by evidence that the defendant gained unauthorized entry to a private home after determining that the occupants were away). Evidence that Pacheco used a similar *modus operandi* at the homes of Scott and Natalie Arnold and Joseph Koch,

28

together with the fact that Pacheco was found in possession of items stolen from those homes, establishes that Pacheco intended to commit theft upon entry into the Kipilas' home. *See Commonwealth v. Lasch*, 347 A.2d 690, (Pa. 1975).

> [W]here evidence of other crimes has an independent relevance to the crime being tried -- where it tends to prove such elements as motive, intent, absence of mistake or accident, a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, or the identity of the person charged with the crime being tried -- it is admissible for such limited purpose.

*Id.* (multiple burglaries could be tied together where all took place in the same area and the defendants were found with items stolen from each victim)*; accord Commonwealth v. Gonzales* , 443 A.2d 301, (Pa. Super. 1982) (in burglary trial, proof of defendant's intent was supported by evidence that defendant had gained unauthorized entry to the same house in the past and had told the owner that owner owed the defendant money); (*Commonwealth v. Barnhart*, 434 A.2d 191, 193 (Pa. Super. 1981) (although defendant was seated in his car while his companions committed a burglary, evidence that he had participated in three other burglaries immediately prior to the crime in question was relevant to show that defendant was not an innocent bystander); *Commonwealth v. Gusciora*, 82 A.2d 540, 542 (Pa. Super. 1951) (defendants' convictions for burglary were supported by evidence that defendants had used containers stolen from one store to carry goods stolen from another store).

Circulated 01/26/2015 11:04 AM

Here, there was overwhelming evidence that Pacheco was a professional burglar who regularly broke into homes and stole valuables. His identity was established through the surveillance video from the Republican Club, Pacheco's consistent *modus operandi*, his consistent choice of clothing, his practice of riding the same stolen bicycle when committing a burglary, and the fact that police had recovered numerous stolen items from his apartment. Thus, any claim that Pacheco's counsel advised him to enter a guilty plea without a factual basis has no merit.

In addition, Pacheco's counsel had sound reasons for her advice that he plead guilty. She knew that if the case proceeded to trial, the Commonwealth could have connected him to the burglary involving Nancy Arnold, who would have described Pacheco smashing her window in vivid detail. Given the strong likelihood of conviction and the mandatory prison sentences Pacheco would have faced had he been convicted, it would have been unwise for him to proceed to trial, and his counsel was not ineffective for advising against that course of action. Thus, Pacheco has failed to show ineffective assistance of counsel in connection with this claim.

Failure To Challenge the Commonwealth's Prima Facie Case

In his PCRA Petition, Pacheco asserted: "Prima Facie was not established to indicate that defendant was the perpetrator of attempted burglary charge." PCRA Petition at 3. In his letter in response to the Notice of Intent To Dismiss Without Hearing, Pacheco asserted: "[C]ounsel lacked

30

Circulated 01/26/2015 11:04 AM

information and/or did not discuss the possibility that the defendant's charge may be temporily [sic] and logically related to defendant's other pending case . . . ." Letter Responding to the Notice of Intent To Dismiss Without Hearing at 2 (Feb. 6, 2013). On appeal, Pacheco asserts, "Here, plea counsel ill advised on the Attempted Burglary, when under the totality of the circumstances the elements demonstrate criminal trespass. . . . Clearly, the defendant was prejudiced by plea counsel's ill advise [sic] and inducement of the plea. . . . The Plea was not knowing or voluntary when it was ill advised." Statement of Matters Complained of on Appeal at 2.

Reading these statements together, Pacheco appears to be arguing that his guilty plea was involuntary and unknowing, because counsel was ineffective in (1) failing to explain to him that she could file a motion challenging the sufficiency of the Commonwealth's prima facie case presented at his preliminary hearing and (2) failing to file such a motion. We disagree.

Absent a demonstration of ineffective assistance of counsel, Pacheco cannot overcome the fact that he waived his rights to file pretrial motions challenging the sufficiency of the Commonwealth's case. *See* Guilty Plea Colloquy No. 3795-2011, Question 30. In addition, once there has been an adjudication of guilt, any defect in the preliminary hearing becomes moot. *See Commonwealth v. McCullough*, 461 A.2d 1229 (Pa. 1983) (failure of Commonwealth to establish a prima facie case at the preliminary hearing

31

Circulated 01/26/2015 11:04 AM

was immaterial where the Commonwealth met its burden of proving the offense beyond a reasonable doubt at trial); *Commonwealth v. Lee*, 662 A.2d 645, 650 (Pa. Super. 1995) (adjudication of guilt renders moot any claim that the Commonwealth failed to establish a prima facie case at the preliminary hearing); *Commonwealth v. Hale*, 2010 WL 5620793 (C.P. Northampton Co. May 4, 2010) (issue as to whether Commonwealth established a prima facie case at the preliminary hearing was rendered moot once defendant pled guilty). Thus, Pacheco has failed to demonstrate any right to relief with respect to this claim.

<u>Failure To Challenge Lack of Representation at the Preliminary Hearing</u>

In his PCRA Petition, Pacheco asserted: "Defendant was not represented by counsel at his preliminary hearing; was denied the opportunity to postpone proceeding to obtain counsel and defendant did not waive the hearing." PCRA Petition at 3. In his letter responding to the Notice of Intent To Dismiss Without Hearing, Pacheco wrote a lengthy paragraph about the alleged denial of his right to counsel at the preliminary hearing, followed immediately by the statement, "I claim that my plea was not knowingly or intelligently made because 'under the theory the plea of guilty is not binding upon a defendant when induced by fear, promises, improper persuasion or ignorance' as taken from Com. v. Scolari 415 Pa. 218 1964." Letter Responding to Notice of Intent to Dismiss Without Hearing at 2 (Feb. 6, 2013). On appeal, Pacheco asserts:

32

Circulated 01/26/2015 11:04 AM

There is no dispute the defendant was not represented at his Preliminary [sic] by counsel at a critical stage of adjudication, specifically the Preliminary hearing. Accordingly, the denial of the Sixth Amendment Right voids the conviction. . . . Clearly, the defect of the preliminary Hearing would have been challenged prior to a plea, which the Sixth Amendment attached.

Statement of Matters Complained of on Appeal at 1-2.

Once again, the nature of Pacheco's claim is not entirely clear. However, the Court treats this issue as a claim that Pacheco's plea was involuntary and unknowing because his counsel was ineffective in (1) failing to explain to him that she could file a motion challenging the alleged denial of counsel at the preliminary hearing; and (2) failing to file such a motion.

Claims for ineffective assistance of counsel in the conduct of the preliminary hearing are not cognizable under the PCRA, because they do not implicate the truth-determining process. *See Commonwealth v. Lassen*, 659 A.2d 999, 1007 (Pa. Super. 1995); *Commonwealth v. Hale*, 2010 WL 5620793 (C.P. Northampton Co. May 4, 2010); *Commonwealth v. Tirado*, 2007 WL 6921343 (C.P. Lehigh Co. Nov. 21, 2007).

Even if denial of counsel at the preliminary hearing were cognizable under the PCRA, such denial would not be deemed reversible error unless the defendant could show prejudice, *i.e.*, a reasonable probability that absent the error, the outcome would have been different. *See Ditch v. Grace*, 479 F.3d 249, 258-59 (3d Cir. 2007) (applying Pennsylvania law) (even though defendant was "unquestionably denied his right to counsel at the preliminary hearing" where witness made in-court identification, and

33

Circulated 01/26/2015 11:04 AM

even though the uncounseled identification was *per se* inadmissible, such that "trial counsel's performance fell below an objective standard of reasonableness when he did not file a motion to suppress the identification," nevertheless, defendant could not show prejudice, since "the jury's verdict was supported by overwhelming evidence of guilt involving unchallenged ballistics evidence, and therefore "counsel was not constitutionally ineffective for failing to seek to suppress the identification made at the preliminary hearing"); *Commonwealth v. Bastone*, 467 A.2d 1339, 1341 (Pa. Super. 1983) (even if defendant had been improperly denied his right to counsel at the preliminary hearing, any such denial would have been harmless error, since "appellant has not alleged that any prejudice resulted from the absence of counsel at the preliminary hearing"); *Commonwealth v. Carver*, 436 A.2d 1209, 1211 (Pa. Super. 1981) (although defendant was blatantly denied his right to counsel at preliminary hearing where in-court identifications were made, and same eyewitnesses later identified defendant at trial, denial of counsel at the preliminary hearing did not constitute reversible error, because defendant could not show that representation at preliminary hearing would have changed the outcome: witnesses' identifications were based on close observation in good light within one hour of the crime and were "certain and unshakeable").

34

Circulated 01/26/2015 11:04 AM

Similarly here, given that there was overwhelming evidence of guilt, it is unlikely that having counsel present at Pacheco's preliminary hearing would have changed the outcome. Thus, it would have been futile for Pacheco's counsel to challenge his lack of representation at the preliminary hearing. Counsel cannot be deemed ineffective for failing to pursue a baseless claim. *See Commonwealth v. Gaerttner*, 649 A.2d 139 (Pa. Super. 1994).

Pacheco does not allege that he suffered any prejudice. Because Pacheco has alleged no prejudice from the lack of representation, he has failed to carry his burden of showing that he is entitled to PCRA relief.[3]

Failure To Advise of the Possibility of Consecutive Sentences

In his PCRA Petition, Pacheco asserted:

Defendants [sic] guilty plea was promoted by counsels urging in that a guilty verdict was likely at trial and that sentencing judge would render a concurrent sentence with defendants other pending burglary charge. . . . Sentencing judge did not explain to defendant the difference between a concurrent sentence and a consecutive sentence and was not told by judge that a consecutive sentence could be imposed. . . . Defendants [sic] guilty plea was not knowingly, understandingly and intelligently entered because he was not fully apprised of the maximum sentence possible.

---

[3] We note that it is incorrect that Pacheco was denied a postponement of the preliminary hearing in order to obtain counsel. The Criminal Docket Sheet shows that Pacheco was granted a continuance of the preliminary hearing on November 4, 2011 for the express purpose of securing legal representation. *See* Criminal Docket Sheet, *Commonwealth v. Raul Pacheco*, C-48-CR-3795-2011 (C.P. Northampton Co. Nov. 4, 2011).

35

Circulated 01/26/2015 11:04 AM

In his letter responding to the Notice of Intent to Dismiss Without Hearing, Pacheco stated: Defendant would not have plead [sic] guilty if (according to ABA Standards 2nd ed. 1980 14-1, 4(ii)) 'The maximum possible sentence on the charge, including that possibility from consecutive sentences' had been explained to him." Letter Responding to Notice of Intent To Dismiss Without Hearing at 2 (Feb. 6, 2013).

PCRA Petition at 3. On appeal, Pacheco states:

> Clearly, the defendant was prejudiced by plea counsel's ill advise [sic] and inducement of the plea. . . . The defendant avers that plea counsel provided ineffective assistance of counsel by his failure to withdraw the plea, per the violation of the agreement between the Commonwealth and defense counsel that a five to ten year sentence would be imposed.

Statement of Matters Complained of on Appeal at 2.

Reading these statements together, Pacheco appears to be arguing that his guilty plea was involuntary and unknowing, because counsel was ineffective in (1) failing to explain to him that the Court might impose consecutive sentences; and (2) failing to move to withdraw his guilty plea based on the Court's failure to inform the defendant of the possibility of consecutive sentences. We disagree.

Pacheco's signed Guilty Plea Statements and verbal guilty-plea colloquies indicated that he knew that each count to which he pled guilty carried a maximum penalty of twenty years in prison and that the Court was not bound by the agreed-upon sentence in Pacheco's plea agreement. The record reflects that the Court told Pacheco prior to sentencing that the Court

36

Circulated 01/26/2015 11:04 AM

would not adhere to the agreed-upon sentence but intended to sentence Pacheco "according to the law and according to his prior criminal record." N.T. Mar. 9, 2012 at 2. The Court allowed Pacheco three extra weeks to consider whether, in light of the Court's intentions, he wished to withdraw his guilty pleas or proceed to sentencing. Although the record does not reflect that the Court specifically advised Pacheco that his sentences might be made consecutive, Pacheco's own counsel asked the Court, in front of Pacheco, to consider making the sentences concurrent, which placed Pacheco on notice that the sentences might be made consecutive. *See* N.T. Mar. 30, 2012 at 9.

A defendant suffers no prejudice from a failure to advise of the possibility of consecutive sentences as long as the defendant is advised of the maximum sentence possible on each individual count and the aggregate sentence is no greater than the maximum sentence possible on any one count. *See Commonwealth v. Carter*, 656 A.2d 463, 466 (Pa. 1995) ("[W]here the aggregate sentence falls within the minimum and maximum sentence that can be imposed on a single count of the crimes charged, [defendant] was not prejudiced for not being informed of the maximum total sentence he risked by pleading *nolo contendere*.").

On the charge of criminal attempt to commit burglary in Docket Number 2975-2011, the Court sentenced Pacheco to a term of imprisonment in a state correctional institution for a minimum period of four years to a

37

Circulated 01/26/2015 11:04 AM

maximum period of ten years. *See* N.T. Mar. 30, 2012 at 22. On the charge of criminal attempt to commit burglary in Docket Number 3795-2011, the Court sentenced Pacheco to serve a term of imprisonment in a state correctional institution for a minimum period of three years to a maximum period of ten years. *See id.* at 22-23. The Court ordered the sentences of imprisonment and parole to run consecutive to each other. *See id.* at 23. Thus, Pacheco's aggregate sentence of imprisonment was a minimum period of seven years to a maximum period of twenty years. *See id.* Assuming *arguendo* that Pacheco was not aware that the Court might impose consecutive sentences, because his aggregate sentence of imprisonment falls within the minimum and maximum that could have been imposed on a single count of the crimes charged, *i.e.,* a minimum term of ten years to a maximum term of twenty years, Pacheco has suffered no prejudice from any alleged failure to inform him of the possibility of consecutive sentences. *See Carter*, 656 A.2d at 466. Based on the above-cited authority, the Court concludes that Pacheco's guilty plea was knowing and voluntary.

Failure To Withdraw Plea After Court Rejected Agreed-Upon Sentence

In his PCRA Petition, in addition to the above claims concerning the consecutive sentence and the maximum sentence possible, Pacheco asserted: "Counsel did not object to sentence, nor explain post sentencing appeal rights to defendant." PCRA Petition at 3. On appeal, Pacheco states:

> Clearly, the defendant was prejudiced by plea counsel's ill advise [sic] and inducement of the plea. . . . The defendant avers that

38

plea counsel provided ineffective assistance of counsel by his failure to withdraw the plea, per the violation of the agreement between the Commonwealth and defense counsel that a five to ten year sentence would be imposed. . . . It is true the Court is not bounds by a plea agreement. However, it is settled law a defendant may withdraw the plea under such circumstances.

Statement of Matters Complained of on Appeal at 2.

Reading these statements together, Pacheco appears to be arguing that his guilty plea was involuntary and unknowing, because counsel was ineffective in (1) failing to advise him that the Court might reject the agreed-upon sentence; and (2) failing to move to withdraw his guilty plea based on the Court's rejection of the agreed-upon sentence. We disagree.

At the March 9, 2012 hearing, the Court told Pacheco that it would not adhere to the agreed-upon sentence. The Court told Pacheco that it was his choice whether to withdraw his guilty pleas or proceed to sentencing. The attorney for the Commonwealth explained to Pacheco what his sentencing options would be if he proceeded to trial. The Court gave Pacheco three weeks to consider whether, in light of the Court's intentions, he wanted to withdraw his plea or proceed with sentencing. On March 30, 2012, just before imposing sentence, the Court again asked Pacheco whether he wished to withdraw his guilty pleas. Pacheco told the Court, "Wish for my plea to stand." N.T. Mar. 30, 2012 at 3. Pacheco cannot now credibly contend that he was ignorant of his right to withdraw his plea due to ineffective assistance of counsel.

39

Circulated 01/26/2015 11:04 AM

## The Commonwealth's Failure To "Remain Silent"

Finally, Pacheco claims that the Commonwealth "did not remain silent and violated the agreement." Statement of Matters Complained of on Appeal at 2. Pacheco is presumably suggesting that the Commonwealth agreed not to request a sentence longer than the agreed-upon sentence but then read Nancy Arnold's letter asking that Pacheco be "prosecuted for each of his offenses." N.T. Mar. 30, 2012 at 16. Pacheco did not include this issue in his PCRA Petition or in any of his submissions to the Court prior to the denial of the Petition. He is raising it for the first time in his Statement of Matters Complained of on Appeal. "It is well settled that 'issues not raised in a PCRA petition cannot be considered on appeal.'" *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (quoting *Commonwealth v. Lauro*, 819 A.2d 100, 104 (Pa. Super. 2003)). Accordingly, this claim has been waived on appeal.

## Sufficiency of PCRA Counsel's No-Merit Letter

Pacheco asserts that PCRA counsel's No-Merit Letter was deficient in that it failed to satisfy the requirements established by the Pennsylvania Supreme Court in *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and further defined by the Pennsylvania Superior Court in *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). We disagree.

40

Circulated 01/26/2015 11:04 AM

When court-appointed counsel concludes that the issues raised in a PCRA Petition are without merit, counsel fully satisfies his professional obligation under the Pennsylvania Rules of Criminal Procedure by filing a letter in which he (1) details the nature and extent of his review; (2) lists the issues raised in the PCRA Petition; and (3) explains why he has concluded that the issues have no merit. *See Turner*, 544 A.2d at 928; *Finley*, 550 A.2d at 215. If the Court conducts its own independent review and agrees with counsel that the issues are meritless, PCRA counsel may be permitted to withdraw. *See Turner*, 544 A.2d at 928; *Finley*, 550 A.2d at 215. At that time, the petitioner "will be permitted to proceed pro se, or by privately retained counsel, or not at all." *Turner*, 544 A.2d at 928-29.

Here, PCRA counsel filed a four-page letter in which he stated that he had reviewed the files in the two criminal cases, including the Criminal Informations signed by Pacheco, the PSI Report, the guilty plea transcripts of January 3, 2012 and January 26, 2012, the written Guilty Plea Colloquies signed by Pacheco, and the Post-Sentencing Rights form signed by Pacheco. *See* No-Merit Letter at 2. PCRA counsel listed each of the issues raised in the PCRA Petition and explained in detail why he had concluded that the issues were without merit, providing specific citations to the record. *See id.* at 2-3. Pacheco asserts that the No-Merit Letter was deficient in that it does not include citation to legal authority. *See* Statement of Matters Complained of on Appeal at 1. However, *Turner* and *Finley* do not require that counsel

41

include citation to legal authority, nor has Pacheco cited any case that so holds. Accordingly, the Court concludes that counsel's No-Merit Letter satisfied the standards set forth in *Turner* and *Finley*.

## CONCLUSION

For the foregoing reasons, we respectfully suggest that Pacheco's appeal lacks merit and should be dismissed.

BY THE COURT,

MICHAEL J. KOURY, JR., J.

42